JUSTICE TRIEWEILER
delivered the Opinion of the Court.
Petitioner Tanya Truax petitioned the District Court for the Twentieth Judicial District in Lake County for dissolution of her marriage to respondent, H.V. “Bill” Truax, and for equitable division of the couple’s property. The District Court entered a decree in which it dissolved the parties’ marriage, and distributed certain assets to each. Tanya appeals from the District Court’s property distribution. We affirm the decree of the District Court.
The following issues are raised on appeal:
1. Did the District Court abuse its discretion by its apportionment of the pension funds earned by Bill from Frontier Airlines?
2. Did the District Court err when it included Tanya’s Glacier Bank account in the marital estate?

FACTUAL BACKGROUND

Bill and Tanya were married on November 20, 1980, in Kalispell. Tanya had worked as a teacher in North Dakota prior to the parties’ *124 marriage, but quit her teaching position and withdrew the retirement funds she had earned when she married Bill. Tanya moved to Kalispell with Bill, helped care for two of his children from a prior marriage, and helped maintain the couple’s home. In 1989, she returned to work as a teacher. At the time of trial, she earned $27,000 annually in that occupation.
Bill worked as a pilot for Frontier Airlines from 1962 until 1986. During that employment, Frontier contributed to a pension fund on his behalf.
In 1986, Frontier Airlines declared bankruptcy. For several years afterward, Bill worked for other airlines. However, he received no additional contributions to any retirement plan. He retired from flying in 1992. Tanya and Bill separated in April 1994. At the time of trial, she was 46 and he was 61 years old.
Bill’s Frontier pension was distributed in a lump sum amount of $328,916.12 on December 26,1989. The funds were then divided into two IRAs. One was deposited at BankWest, and the other at D.A. Davidson. There were withdrawals from the pension funds during the marriage for living expenses and for construction of a new home. At the time of trial, the total amount remaining in the two IRAs was $267,358.
Bill testified that he is now unable to fly commercially because he is over age 60, and is retired. Tanya testified that she is now employed as a tenured teacher earning approximately $27,000 per year.
The parties agreed on the distribution of marital assets, with the exception of Bill’s Frontier Airlines pension. They also disagreed on the question of whether Tanya’s Glacier Bank account should be designated a marital asset.
Johnnie McCann, a CPA retained by Tanya, testified that the value of Bill’s retirement at the time of the marriage was approximately $32,000, based on figures obtained from a loan application. However, she admitted that she was unable to obtain third-party documentation of the actual value. She arrived at the amount earned during the marriage by subtracting $32,000 from the current balance. Tanya contended that one-half of that balance was the share of Bill’s pension to which she was entitled.
Tom Torgenson, a CPA retained by Bill, valued the pension by taking the total number of months Bill was employed at Frontier (291), and dividing that number by the number of months Bill was employed by Frontier during the marriage (69). The result was 23.7 percent. He thereby concluded that 23.7 percent of the pension *125 was earned during the marriage. It was and is Bill’s contention that Tanya is entitled to one-half of that amount, but that the remaining amount is a pre-marital asset. The District Court agreed. It distributed approximately $32,000 of the pension balance to Tanya.
The District Court also designated a Glacier Bank account as a marital asset, but awarded the entire account to Tanya. Tanya testified that of the $15,587 in the account, $10,000 was a gift to her from her father and the remainder belonged to a Canadian friend.

ISSUE 1

Did the District Court abuse its discretion by its apportionment of the pension funds earned by Bill from Frontier Airlines?
When we review a district court’s division of marital property, we will uphold the district court unless the findings upon which that division is based are clearly erroneous or there has been an abuse of discretion. In re Marriage of Maedje (1994), 263 Mont. 262, 265-66, 868 P.2d 580, 583.
Retirement benefits are part of the marital estate. Rolfe v. Rolfe (1988), 234 Mont. 294, 296, 766 P.2d 223, 225 (citing Karr v. Karr (1981), 192 Mont. 388, 628 P.2d 267). The question is how to equitably divide those benefits.
In this case, the court heard testimony from the parties’ experts, both of whom are certified public accountants, regarding the value of the pension earned during the marriage. Tanya’s valuation depended on the assumption that the pension had a value of $32,000 on the date of the couple’s marriage. However, that amount came from a loan application which Bill had not signed and which was based on a figure that he stated he had not provided. He testified that he did not know the actual value at the time of the couple’s marriage, and neither party was able to provide independent confirmation of that value. Under these circumstances, it was not unreasonable for the District Court to rely on the testimony of Bill’s accountant and apportion benefits based on the time rule approved (for other reasons) in Rolfe, 766 P.2d at 226. Applying that formula, “the marital interest is represented by a fraction, the numerator of which is the length of the employee’s service during the marriage, and the denominator is the employee’s total length of service.” Rolfe, 766 P.2d at 226.
The dissent contends that Bill’s pension should have been distributed based on its present value without regard to the time rule. However, an equitable apportionment of the pension based merely on its present value would require some determination of the value *126 accumulated during the marriage. While the dissent makes the factual argument that the value at the time of marriage should be found based on an unsigned financial statement, the accuracy of which could not be established, it was the District Court’s responsibility to resolve the factual issue created by this circumstantial evidence and Bill’s denial that he knew the value of the pension at the time of marriage. The dissent would have us disregard the District Court’s fact-finding function, and establish our own value for the pension on the date of marriage. However, doing so would not only require that we ignore the limited scope of our review, but also that we assume that during the first 18 years of contributions to Bill’s pension, he earned only $32,000, but that during the next six years of contributions, plus three years of interest, he earned nearly $297,000. The implausibility of this assumption supports its rejection by the District Court.
While it is true, as pointed out by the dissent, that Rolfe adopted the time rule based upon contingencies that affected the value of a party’s pension after the marriage, the rule is equally applicable in this case where the District Court had no reliable evidence with which to evaluate the pension at the beginning of the parties’ marriage.
We conclude that substantial credible evidence supports the District Court’s apportionment of Bill’s retirement benefits. The District Court’s findings were not clearly erroneous, and it did not abuse its discretion by the manner in which these benefits were distributed.

ISSUE 2

Did the District Court err when it included Tanya’s Glacier Bank account in the marital estate?
Tanya claims that the Glacier Bank account contained only money that was a gift to her from her father and money which she was holding for a Canadian friend, and should not have been designated as a marital asset. However, the District Court awarded the entire amount in the Glacier Bank account to Tanya, even though it was designated a marital asset. We have held that dissolution decrees will not be reversed for error which does not materially affect the substantial rights of the parties. In re Marriage of Dreesbach (1994), 265 Mont. 216, 226, 875 P.2d 1018, 1024 (citing In re Marriage of Lopez (1992), 255 Mont. 238, 245, 841 P.2d 1122, 1126). Since the parties agree upon the distribution of all assets other than Bill’s retirement benefits (which we have affirmed were distributed equitably), and since the Glacier Bank account was distributed to Tanya *127 in its entirety, regardless of its classification, we conclude that Tanya’s substantial rights were not affected by any misclassification that might have occurred. While the dissent disagrees with this resolution of our second issue, it offers no explanation of how Tanya’s substantial rights were adversely affected by the District Court’s disposition of her bank account.
The judgment of the District Court is affirmed.
JUSTICES HUNT, WEBER and LEAPHART concur.