No. 03-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 124

IN RE THE MARRIAGE OF

RONALD T. SWANSON,

Petitioner and Appellant,

and

RENNEE A. SWANSON,

Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DR-01-1203,
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chris J. Nelson, Attorney at Law, Billings, Montana

For Respondent:

Addison Sessions, Attorney at Law, Billings, Montana

Submitted on Briefs:  November 13, 2003

Decided:  May 11, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1      Ronald T. Swanson (Ronald) petitioned for dissolution of his marriage to Rennee A. Swanson (Rennee) in the Thirteenth Judicial District Court, Yellowstone County. Following a non-jury trial, the District Court entered Findings of Fact, Conclusions of Law, and Decree of Dissolution and Memorandum, dissolving the parties' marriage, distributing the couple's property and setting up a temporary maintenance award from Ronald to Rennee. Ronald appeals, and Rennee cross-appeals from the District Court's property distribution. Ronald additionally appeals from the District Court's maintenance award. Rennee additionally cross-appeals from the court's failure to award attorney fees. We affirm in part, reverse in part, and remand.

BACKGROUND

¶2      Ronald and Rennee married on July 16, 1993. They separated on August 27, 2001, and Ronald filed a petition for dissolution of marriage in the Thirteenth Judicial District Court, Yellowstone County, on October 19, 2001. The court held a hearing without a jury on November 15, 2002.

¶3      At the time of their marriage, Ronald was employed as a boilermaker and welder. He also raised cattle. At the time of trial, his annual income was approximately $37,856. The court found that Ronald's living expenses consisted of $1638 per month, determining that his net monthly income exceeded his expenses by $1517.

¶4      At the time of their marriage, Rennee was a waitress. At the time of trial, she was a clerk in a retail store earning approximately $10 per hour. However, she planned to move to Las Vegas, Nevada, where she estimated that her income would be approximately $7 per

2

hour. The court found that Rennee's living expenses consisted of $1423 per month, determining that her expenses exceeded her estimated income by approximately $574.

¶5 Through his union and employment, Ronald had two retirement plans: Boilermakers National Annuity Trust (annuity) and Boilermaker-Blacksmith National Pension Trust (pension). Both plans were "defined contribution" plans as opposed to "defined benefit" plans. When calculating the marital value of these plans, the District Court used the "present value" method and assigned percentages to both parties as to the amounts to which they were entitled when the plans paid out. Specifically, the court found that 87.04% of the annuity plan was earned during the marriage, therefore, it calculated that Rennee was entitled to receive 43.5% of the annuity. The court found that 52.68% of the pension plan was earned during the marriage, therefore, it calculated that Rennee was entitled to receive 26.95% of the pension. Notably, the court determined that Rennee would receive the above percentages at the time Ronald started receiving his retirement benefits.

¶6 As part of the marital estate, the District Court included $10,880 of debt on a BankOne Visa allocated to Rennee and $1000 from the sale of Pete the Horse allocated to Ronald. However, the court excluded seven cows from the marital estate, identifying them as Ronald's premarital property.

¶7 As a result of the property distribution, the court found that Rennee lacked sufficient property to provide for her reasonable needs, and after considering the factors contained in § 40-4-203, MCA, it awarded her maintenance of $500 per month for a three year period. It also deemed each party responsible for their own attorney fees.

¶8 We restate the issues on appeal:

3

¶9    1. Whether the District Court erred when it determined the value and distribution of the marital estate.

¶10    2. Whether the District Court erred when it determined the maintenance award from Ronald to Rennee.

¶11    3. Whether the District Court erred when it did not award attorney fees to Rennee.

STANDARD OF REVIEW

¶12    Section 40-4-202, MCA, governs the distribution of the marital estate vesting a district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. *In re Marriage of Bee*, 2002 MT 49, ¶ 34, 309 Mont. 34, ¶ 34, 43 P.3d 903, ¶ 34. We initially review a district court's division of marital property and maintenance awards to determine whether the findings of fact upon which the division is based are clearly erroneous. *See In re Marriage of Gerhart*, 2003 MT 292, ¶ 15, 318 Mont. 94, ¶ 15, 78 P.3d 1219, ¶ 15; *In re Marriage of Haines*, 2002 MT 182, ¶ 15, 311 Mont. 70, ¶ 15, 53 P.3d 378, ¶ 15. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Steinbeisser,* 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17. Absent clearly erroneous findings, this Court will affirm a district court's division of property unless we identify an abuse of discretion. *Gerhart*, ¶ 16.

¶13    We review a district court's award of attorney fees in a dissolution action to determine whether the court abused its discretion, whereby a district court's determination regarding such fees will not be disturbed absent an abuse of discretion. *In re Marriage of Fishbaugh*,

4

2002 MT 175, ¶ 30, 310 Mont. 519, ¶ 30, 52 P.3d 395, ¶ 30.

DISCUSSION

ISSUE ONE

¶14 Whether the District Court erred when it determined the value and distribution of the marital estate.

¶15 A district court has broad discretion to adopt any reasonable valuation of property supported by the record, *Bee*, ¶ 34, and this Court will not substitute its judgment for that of a trial court on such matters. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 21, 309 Mont. 254, ¶ 21, 46 P.3d 49, ¶ 21.

¶16 On appeal and cross-appeal, both parties argue that the District Court erred in determining distribution of the marital estate. Specifically, Ronald challenges the court's calculation of the valuation and distribution of his two retirement funds to Rennee and the inclusion of a BankOne Visa debt as marital debt. Rennee objects to distribution to Ronald of the $1000 proceeds from the sale of Pete the Horse and the exclusion of seven cows from the marital estate. She also claims that the court incorrectly found that the parties' 1989 Ford Ranger belonged to Ronald's son.

¶17 As a preliminary matter, in his answer to Rennee's cross-appeal, Ronald conceded that the District Court omitted awarding the 1989 Ford Ranger to either party and agreed that it should be sold and the proceeds divided on an equal basis. Further, Ronald directs our attention to the property settlement in regards to Pete the Horse and points out that the court did include the proceeds of the sale on his side of the ledger and thus it was properly included in the marital estate. In her reply brief, Rennee concedes that proceeds from the

sale of Pete the Horse were properly included in the marital estate. We therefore choose not to address these issues, and remand to the District Court with instructions to distribute the proceeds of the sale of the 1989 Ford Ranger on an equal basis.

¶18     We now turn to the contested issues in the Swanson's marital property distribution. First, we consider the District Court's distribution calculation of Ronald's two pension plans. In determining the percentage of the plan awarded to each party at payout, the court employed the "present value" method, as opposed to the "time rule" method, based on the fact that Ronald's plans were "defined contribution plans" and the parties presented evidence showing the value of the accounts both at time of marriage and time of divorce. As such, for the annuity account, it subtracted the value of the account on June 30, 1993, from the balance of the account on December 31, 2001, to ascertain the marital portion of the asset. It determined that the marital asset was approximately 87% of the total annuity, therefore, at payout Rennee was entitled to 43.5% of each payment. For the pension plan, the court added the yearly contributions during the marriage to determine the marital portion of the account. As a result, it determined that the marital amount was approximately 53.9% of the contributions, therefore, at payout Rennee was entitled to 26.95% of each payment.

¶19     Ronald claims that there is insufficient evidence in the record to support the District Court's determination of distribution of his two retirement funds. He asserts that the court should have employed the time rule method to calculate the distribution because it was impossible to reduce the plan to its present value and pay Rennee a fair share of cash representing her interest in the funds. He bases this argument on the assertion that it is impossible to tell what percentage of each plan was earned during the marriage due to the

6

fact that he is still working and contributing to each plan. Consequently, at the time he would draw on each plan, the percentage of the respective plans earned during the marriage would be far less than the date of divorce.

¶20    In response, Rennee asserts that the District Court correctly determined the percentage of the accounts entitled to her at payout. She contends the time rule method has been applied by this Court when the value of the accounts are unknown either at the time of marriage or the time of divorce. Under these circumstances, relying upon *In re Marriage of Truax* (1995), 271 Mont. 122, 125-26, 894 P.2d 936, 938, she asserts that due to the evidence presented providing the value of the accounts at both times, the present value method is appropriate. Furthermore, she argues that the time rule method is not appropriate when plans are "defined contribution plans" as are Ronald's plans. Therefore, she maintains that the present value method, as utilized by the District Court, is the appropriate method to determine her distribution of Ronald's pension plans. We disagree.

¶21    This Court has long held that pension plans are part of the marital estate, therefore, the question is how to equitably divide such plans. *See Truax*, 271 Mont. at 125, 894 P.2d at 938. We have considered two methods for establishing values of pension plans: (1) the present value method (lump sum distribution); and (2) the time rule method (deferred distribution). *See In re Marriage of Robinson* (1994), 269 Mont. 293, 298-99, 888 P.2d 895, 898-99. We have said that "[g]enerally, the proper test for determining the value of a pension is the present value." *Rolfe v. Rolfe* (1988), 234 Mont. 294, 296, 766 P.2d 223, 225. Yet, we have held that a district court has not abused its discretion when applying the time rule method. *See Truax*, 271 Mont. at 126, 894 P.2d at 938; *Robinson*, 269 Mont. at 299,

7

888 P.2d at 899.

¶22   The present value method enables parties to determine and distribute the value of the pension at the time of divorce in a lump sum. "This method is preferred when the pension can be adequately valued and sufficient assets (either cash or property) exist in the marital estate to offset the present value of the non-employee spouse's portion of the pension." Susan J. Prather, *Comments, Characterization, Valuation, and Distribution of Pensions at Divorce*, 15 J. Am. Acad. Matrim. Law. 443, 455 (1998). Courts frequently value defined contribution plans via the present value method because such values are readily ascertainable at the time of dissolution and sufficient other marital assets exist to compensate the non-employee spouse for her share at that time. Prather, *supra*, at 455. Thus, at the time of dissolution, courts assign a value to the plans and offset the property settlement including such values.

¶23   Conversely, due to various contingencies such as unreliable evidence, future contributions and other speculative factors, determining the present value of pension plans is difficult, thus courts apply the time rule method when the district court defers distribution of the marital portion of the pension until payout of the benefit. *See Truax*, 271 Mont. at 125, 894 P.2d at 938 ("[the husband] testified that he did not know the actual value at the time of the couple's marriage, and neither party was able to provide independent confirmation of that value. Under [those] circumstances, it was not unreasonable for the District Court to . . . apportion benefits based upon the time rule . . . ."); *Robinson*, 269 Mont. at 299, 888 P.2d at 898 (holding that the district court did not err when it applied the time rule because "[a] spouse . . . is entitled to increases or accruals on his or her interest in

8

the retirement plan because of the delay in receiving that interest."); *Rolfe*, 234 Mont. at 299, 766 P.2d at 226 ("if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid.") (quoting *In re Marriage of Brown* (Cal. 1976), 544 P.2d 561, 567). We described the time rule method in *Rolfe*, whereby:

> the marital interest is represented by a fraction, the numerator of which is the length of the employee's service during the marriage, and the denominator is the employee's total length of service. This fraction is then applied to each benefit payment, lump or periodic, to determine the portion earned during the marriage. Although the extent of the marital interest is determined as of the date of the dissolution, the benefit factors to be applied to the pension credits earned during the marriage are those in effect at retirement.

*Rolfe*, 234 Mont. at 298, 766 P.2d at 226.

¶24    We concur with Ronald that the time rule method of valuation is appropriate in this case, however, we come to our conclusion for different reasons. After reviewing the District Court's valuation determination, we have determined that the findings of fact upon which the valuation is based are clearly erroneous. This Court is convinced that the District Court mistakenly combined both the present value and time rule methods in determining the distribution of Ronald's pension and annuity plans, thereby creating a hybrid approach clearly not supported by any Montana or other jurisdiction's case law.

¶25    As we said in *Rolfe*, a district court is granted substantial discretion to devise a method to accomplish an equitable distribution. *Rolfe*, 234 Mont. at 300, 766 P.2d at 227. Here the District Court chose to defer distribution of Ronald's pension plans until he retired and payments commenced. From the record, we attribute this decision to either the lack of

9

marital assets to offset the present value of the accounts, or the difficulty in ascertaining the present value of the accounts due to the fact that Ronald continues to contribute to the plans. Here, the District Court proceeded to use the present value method to determine the marital property value of the plans and converted the value into a percentage that Rennee would be entitled to at payout. Therein lies the District Court's error, whereby the court assigned a present value of the account and then combined it with the percentage and deferred distribution concept from the time rule method.

¶26    In any event, the court mistakenly combined these valuation methods. We conclude that substantial credible evidence does not support the District Court's apportionment of Ronald's pension and annuity plans, therefore, it abused its discretion. The District Court has broad discretion to apply whichever method it deems appropriate in valuing the pension plan, however, it may not combine these methods. If the court determines that the present value method is appropriate under these circumstances, then the property settlement must reflect a present offset or payment for such valuation. If the court determines that the time rule is more appropriate under these circumstances, then it must use the formula this Court has adopted in *Rolfe* to establish the marital value of the pension plans and assign a percentage of payout that Rennee is entitled to at the time of payout. We remand this issue to the District Court for determination consistent with this Opinion.

¶27    Second, we consider the BankOne Visa debt. Ronald argues that the District Court erred when it treated the BankOne Visa debt in the amount of $10,880 as a marital debt. He asserts that Rennee incurred the debt prior to marriage by remodeling her kitchen in her mobile home that she subsequently sold for $3200, and she could not substantiate the exact

10

amount charged on the credit card for the remodel. Thus, he contends that the debt should be offset by the $3200 realized on the sale of the mobile home. Rennee asserts that there is substantial evidence to support her claim that the $10,880 debt was incurred during the marriage and enjoyed by both parties, therefore, such reduction would be improper.

¶28 The District Court had the opportunity to review the evidence presented and observe the testimony of the parties. Accordingly, we conclude that there is sufficient evidence to support the court's distribution of debt. We further determine that the evidence has not been misapprehended and we do not have any conviction that a mistake has been made. We, therefore, hold the District Court did not abuse its discretion in treating the BankOne Visa debt as a marital debt.

¶29 Third, in her cross-appeal, Rennee argues that the District Court erred when it found that the seven cows were Ronald's separate property, consequently not including the value in the marital estate. Section 40-4-202, MCA, provides for equitable distribution of pre-acquired property, requiring a district court to take into consideration the contributions of the non-acquiring spouse to its preservation or appreciation. *Stoneman v. Drollinger,* 2000 MT 274, ¶ 18, 302 Mont. 107, ¶ 18, 14 P.3d 12, ¶ 18. The non-acquiring spouse is entitled to an equitable share of only the appreciated or preserved value which is attributable to his or her efforts. *In re Marriage of Rolf*, 2000 MT 361, ¶ 46, 303 Mont. 349, ¶ 46, 16 P.3d 345, ¶ 46.

¶30 While recognizing that he bought cows prior to the marriage, Rennee contends that her direct and indirect contributions to the marriage helped maintain the small original and replacement herd and her income helped maintain the family home. Thus, she contributed

11

to the maintenance and increase in value of the herd and the cows should have been included in the marital estate.

¶31	Ronald rebuts Rennee's argument of contribution by stating that the court correctly concluded that the cattle can be traced to the sale of his premarital property, treating them as his premarital property. He asserts that the court made an implicit finding that Rennee's contributions to the upkeep of the cattle were minimal, as supported by the evidence, thus its finding that the cattle could be traced to his premarital monies was not in error. *See Interstate Brands Corp. v. Cannon* (1985), 218 Mont. 380, 708 P.2d 573.

¶32	We conclude that the District Court did, in fact, consider Rennee's contributions to the maintenance of the cattle in reference to its preservation and appreciation. Both parties presented testimony and evidence addressing Rennee's contributions. While required to consider such contributions, district courts are vested with broad discretion to consider such evidence, determine fair distributions and exclude assets or property from the marital estate. *See Harper v. Harper*, 1999 MT 321, ¶ 36, 297 Mont. 290, ¶ 36, 994 P.2d 1, ¶ 36. Accordingly, there is sufficient evidence to support the court's finding that the cattle could be traced to pre-marital land proceeds and that evidence has not been misapprehended nor do we have any conviction that a mistake has been made. We, therefore, conclude the District Court did not abuse its discretion in treating the cattle as Ronald's pre-marital property, thus outside the marital estate.

¶33	In summary, we affirm the District Court as to the disposition of the BankOne Visa debt, the proceeds from the sale of Pete the Horse and the designation of the cattle as pre-marital property. We reverse the District Court regarding the 1989 Ford Ranger and direct

12

it to distribute the proceeds of the sale of the truck equally. We also reverse the District Court regarding its determination of valuation for Ronald's two pension plans and remand for determination not inconsistent with this Opinion.

ISSUE TWO

¶34 Whether the District Court erred when it determined the maintenance award from Ronald to Rennee.

¶35 In considering the factors contained in § 40-4-203, MCA, the District Court concluded that Rennee lacked sufficient property to provide for her needs and was unable to support herself through appropriate employment. Therefore, it awarded her maintenance of $500 per month for a three year period. Ronald argues that the District Court misapprehended the evidence and thus erred in awarding maintenance to Rennee. Furthermore, he asserts that the court erred in determining Rennee's needs and suggests that this issue should be remanded for redetermination. Rennee counters stating that the evidence supports the District Court's conclusions and she meets the threshold requirements for awarding maintenance pursuant to the statute.

¶36 An award of maintenance is dependent upon a court's finding that a spouse lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. Section 40-4-203(1), MCA; *Bee*, ¶ 28. The court must consider Rennee's financial resources, her ability to meet her needs independently, the time necessary to acquire sufficient education or training to become employable and the standard of living established during the marriage. Section 40-4-203(2), MCA; *Bee*, ¶ 28.

¶37 Here, the District Court considered Rennee's past work experience and current and

13

future wage earning capabilities. The court found that Rennee planned to move to Las Vegas to live with her brother and sister-in-law where her estimated earnings would be less than in Montana. It also contemplated her living expenses and the nominal property awarded through the division of the marital estate to assist her in her support. It determined from the evidence presented that after the parties separated, Rennee was living at a standard lower than during their marriage. After considering all the factors contained in § 40-4-203, MCA, the court concluded that Rennee should be awarded maintenance of $500 per month for a three year period.

¶38 After reviewing the record and the findings of fact and conclusions of law issued by the District Court, we conclude that the District Court did not abuse its discretion when awarded Rennee temporary maintenance payments pursuant to § 40-4-203, MCA. We affirm the District Court's determination of this issue.

ISSUE THREE

¶39 Whether the District Court erred when it did not award attorney fees to Rennee.

¶40 In her cross-appeal, Rennee contends that the District Court erred when it failed to award her attorney fees. She states that this Court considers three factors when determining whether to award attorney fees: necessity, reasonableness, and production of competent evidence. *See Schmiedling v. Schmiedling*, 2000 MT 237, ¶ 25, 301 Mont. 336, ¶ 25, 9 P.3d 52, ¶ 25. In arguing that she satisfied these requirements, Rennee asserts that it is apparent from the evidence that she could not pay her attorney fees from her own resources, that Ronald has the resources to pay her attorney fees and he is in a much more favorable financial situation than she is in.

14

¶41 Ronald counters stating that according to *Plath v. Schonrock*, 2003 MT 21, 314 Mont. 101, 64 P.3d 984, there are seven factors a court must consider when determining reasonable attorney fees and a district court cannot award reasonable attorney fees without evidence supporting the award and reasonableness of such award. He claims that Rennee submitted no such evidence, and therefore, the court did not err.

¶42 In her answer brief, Rennee responds to Ronald's counter-argument by stating that she requested reasonable attorney fees in all of her pleadings. Furthermore, she stated that providing all the evidence at trial to meet the seven factors would unnecessarily prolong every trial in which fees were requested. She relied upon *In re Marriage of Davies* (1994), 266 Mont. 466, 880 P.2d 1368, to assert that it would be an error to award attorney fees without holding a separate hearing after the trial. Rennee suggested that this appeal should be remanded for a hearing to make such determination of attorney fees awarded to her.

¶43 We are unpersuaded by Rennee's arguments and affirm the District Court's determination to require each party to pay their respective attorney fees. Section 40-4-110(1), MCA, provides in pertinent part:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 and for professional fees, including sums for legal and professional services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the professional, who may enforce the order in the professional's name.

¶44 It is within the discretion of a district court to award attorney fees pursuant to § 40-4-110, MCA. *Marriage of Harper*, 1999 MT 321, ¶ 47, 297 Mont. 290, ¶ 47, 994 P.2d 1, ¶ 47. Absent an abuse of such discretion, this Court will not reverse a district court's

determination regarding attorney fees.  *Harper*, ¶ 47.  After a review of the record, we conclude the District Court did not abuse its discretion when it abstained from awarding attorney fees.  We affirm the District Court on this matter.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER