No. 05-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 233

WAYNE ALLEN MOMSEN,

　　　　Plaintiff and Appellant,

　v.

JEAN ANNE MOMSEN,

　　　　Respondent and Respondent.

APPEAL FROM:　The District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DR 03-10147,
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Brad L. Belke, Attorney at Law, Butte, Montana

　　　　For Respondent:

　　　　Jean Anne Momsen, (pro se), Butte, Montana

Submitted on Briefs:　February 14, 2006

Decided:　September 19, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Wayne and Jean Momsen were married for seventeen years. They had two children together before they married in 1986. Wayne filed for divorce in June 2003. Among other things, Jean sought retroactive premarital child support and a substantial portion of Wayne's monthly retirement benefits. The District Court granted both. Wayne appeals. We reverse and remand.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Was the District Court's award of premarital child support barred by the ten-year statute of limitations applicable to judgments?

¶4 Did the District Court err in its division of Wayne's retirement benefits?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Wayne and Jean Momsen's first child was born on December 2, 1981. Their second child was born on December 4, 1985. Wayne and Jean were not married to each other during this time nor, with the exception of a few weeks, did they live together during these years. They began living together on December 7, 1985, and were married on September 27, 1986. The parties separated on May 9, 2003, and Wayne filed for divorce on June 25, 2003. A trial was held on February 4, 2004. During the trial, Jean testified regarding her request for premarital child support for the period of time between their first child's birth on December 2, 1981, and December 1985, when they began living together as a family. Wayne's attorney argued that the relevant ten-year statute of limitations precluded such a premarital child support award. At the close of trial, the

2

District Court instructed the parties' attorneys to submit briefs on the applicability of the statute of limitations.

¶6 Subsequently, the District Court awarded premarital child support to Jean in the amount of $12,960.00. The court did not address Wayne's statute of limitations argument in its order but stated that it was relying on "principles of equity." In its Findings of Fact, Conclusions of Law and Decree of Dissolution and Order, the court granted Wayne's request for divorce and divided the marital property. The District Court found that Wayne received a pension check of $4,022.00 per month, and that from this sum, Jean was entitled to a monthly amount of $1,126.16. Wayne appeals both the District Court's award of premarital child support and the court's findings and conclusions relative to his monthly pension benefits.

## STANDARD OF REVIEW

¶7 We traditionally review a district court's award of child support to determine whether the district court abused its discretion. *See In re Marriage of Noble*, 2005 MT 113, ¶ 12, 327 Mont. 95, ¶ 12, 112 P.3d 267, ¶ 12 (citations omitted). However, in the case before us the challenge to the child support award is based on the statute of limitations. Whether a district court correctly applied the statute of limitations is a question of law. *Hollister v. Forsythe*, 270 Mont. 91, 93, 889 P.2d 1205, 1206 (1995). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co., Inc.*, 271 Mont. 459, 469, 898 P.2d 680, 686 (1995).

3

¶8　　The distribution of marital property in a dissolution action is governed by § 40-4-202, MCA, which provides in part:

> In a proceeding for dissolution of a marriage, legal separation, or division of property following a decree of dissolution . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of husband or wife or both . . . .

Section 40-4-202(1), MCA.

¶9　　A district court's findings of fact regarding the division of marital property will be upheld unless the relevant findings are clearly erroneous. If a district court's judgment is supported by substantial credible evidence, it will not be disturbed absent an abuse of discretion. *In re Marriage of Meeks*, 276 Mont. 237, 242-43, 915 P.2d 831, 834 (1996) (internal citations omitted).

## DISCUSSION

## ISSUE ONE

¶10　*Was the District Court's award of premarital child support barred by the ten-year statute of limitations applicable to judgments?*

¶11　　Wayne argues that the statute of limitations established in § 27-2-201(1), MCA, precludes an award of child support to Jean for the period of time between December 1981 and December 1985. Relying on *In re Marriage of (Crittendon) Hooper*, 247 Mont. 322, 806 P.2d 541 (1991), he maintains that had he been subject to an order to pay child support, each obliged payment would have become a final judgment debt at the time it was due. Additionally, he posits that the latest date upon which any owed child support

4

debt was due would have been at the time he and Jean married in September 1986. As a result, the ten-year period of limitations expired in September 1996.

¶12 In *Hooper*, after seven years of marriage, the Crittendons divorced in 1973. Mother (who later changed her name and the childrens' names to Hooper) got custody of the couple's children, ages six and one, and was awarded monthly child support. Father made some payments but then stopped. Mother made a few attempts to collect from Father but was unsuccessful. Father ceased contact with his children and later testified he had done so at Hooper's request in exchange for non-payment of child support. In 1990, Mother was awarded $23,250.00 in child support arrearages. Father appealed, arguing that the statute of limitations had run. We agreed, in reliance upon the prevailing trend in other jurisdictions, and held that the statute of limitations applicable to judgments will bar enforcement of delinquent child support obligations which fall outside the statutory limit. *Hooper*, 247 Mont. at 326-27, 806 P.2d at 544. The *Hooper* Court explained,

> These courts [in other jurisdictions] reason that since each child support payment becomes a separate, final judgment as of its date of accrual, the statute of limitations pertaining to final judgments applies. . . . The Montana Supreme Court has stated that each child support payment "becomes a judgment debt similar to any other judgment for money." *In re Marriage of Sabo* (1986), 224 Mont. 252, 254, 730 P.2d 1112, 1113. Thus, the ten-year statute of limitations for actions upon court judgments or decrees, § 27-2-201(1), MCA, applies to actions by one parent against the other for child support arrearages.

*Hooper*, 247 Mont. at 327, 806 P.2d at 544 (internal citations omitted).

¶13 Jean counters that because it was undisputed that Wayne was the child's father, he was liable for child support, presumably regardless of whether or not a court ordered it.

5

She relies on several cases from other jurisdictions holding that a valid, enforceable child support claim, though not enforceable during the pendency of the marriage, is nonetheless not extinguished by the remarriage of the parties, and is actionable at the time the marriage dissolves. *See, e.g., Greene v. Iowa Dist. Court for Polk County*, 312 N.W.2d 915 (Iowa 1981) and *In re Marriage of Root*, 774 S.W.2d 521 (Mo. App. 1989). Jean argues that, in accord with these cases, her claim for child support, though unenforceable during the time she and Wayne were married, was a "vested right" that could not be taken away, and was revived at the time they were divorced.

¶14    The District Court ruled that Wayne must pay retroactive child support based on the strong policy argument that a father has a responsibility to support his child, even without a court order. Without expressly stating it, the court apparently adopted Jean's argument that the parties' interim marriage tolled the statute of limitations which was revived upon their divorce. The District Court rationalized, "[T]here is no logical or equitable basis to allow a parent to incur an obligation (premarital child support), then marry to avoid enforcement of the obligation (by evaporation of the claim or running of the statutes of limitation) and then terminate the marriage relationship once he has purportedly avoided the obligation altogether."

¶15    We disagree and hold that the ten-year statute of limitations established in § 27-2-201, MCA, bars Jean's claim for premarital child support. We note that at no time between the birth of the child in December 1981 and the parties' marriage in December 1985 was an order of child support issued imposing support obligations on Wayne. Nor

is there any reference in the record to Jean seeking such an order. While Wayne may have had a moral obligation to support his child, under the laws in effect at the time he did not have a legally-imposed obligation. Given that a statute of limitations can bar a claim for child support against a person with a legally-imposed obligation, as we held in *Hooper*, it should also bar a claim against a person who had no legal obligation.

¶16 Moreover, we note that the child for whom child support was sought was twenty-three years old at the time of her parents' dissolution trial, and was an emancipated adult no longer residing with her mother.

¶17 The District Court's failure to apply the statute of limitations was incorrect. We reverse the District Court's award of pre-marital child support to Jean.

### ISSUE TWO

¶18 *Did the District Court err in its division of Wayne's retirement benefits?*

¶19 The District Court found that Wayne received a monthly pension from the U.S. Postal Service of $4,022.00. Applying the "time rule formula," it also found that Wayne worked for thirty years to obtain this pension and that for seventeen of those thirty years, or 56% of the time, he was married to Jean. The court therefore calculated that 56% of Wayne's monthly pension totaling $2,252.32 was marital property. It then awarded Jean one-half of this amount, or a monthly amount of $1,126.16.

¶20 Wayne does not dispute that Jean is entitled to a marital portion of his benefits but maintains that the District Court erred when it calculated Jean's share using a gross benefit amount that he does not actually receive. The confusion stems from an affidavit

7

filed shortly after Wayne filed his Petition for Dissolution. In this affidavit Wayne presented his monthly income and a list of his monthly deductions and expenses. He claimed that his "gross earned income" from his government retirement check was $4,022.00. He then subtracted $410.00—the amount automatically deducted as a result of his election to provide Jean a spousal survivor annuity—from this amount. He also indicated that $220.00 was deducted monthly for health insurance, $440.00 for federal taxes, and $150.00 for state taxes. As a result of these automatic deductions, Wayne claimed that his net pension check deposited monthly totaled $2,792.00. He argued that it was error for the court to use the $4,022.00 gross amount rather than the $2,792.00 net amount.

¶21 Jean responds that because Wayne's pension benefits arise from federal employment, Title 5 of the United States Code and Title 5 part 838 of the Code of Federal Regulations (C.F.R.) addressing "court orders affecting retirement benefits" governs. She asserts that the District Court's distribution complies with the federal rules and should not be disturbed.

¶22 Title 5, part 838.103 of the C.F.R. defines terms relevant to our analysis:

> *Self-only annuity* means the recurring unreduced payments under [Civil Service Retirement System] CSRS or [Federal Employees Retirement System] FERS to a retiree with no survivor annuity payable to anyone.
>
> *Gross annuity* means the amount of monthly annuity payable after reducing the self-only annuity to provide survivor annuity benefits, if any, but before any other deduction.
>
> *Net annuity* means the amount of monthly annuity payable after deducting from the gross annuity any amounts that are—

8

(1) Owed by the retiree to the United States;

(2) Deducted for health benefits premiums under section 8906 of title 5, United States Code, and §§ 891.401 and 891.402 of this chapter;

(3) Deducted for life insurance premiums under section 8714a(d) of title 5, United States Code;

(4) Deducted for Medicare premiums;

(5) Properly withheld for Federal income tax purposes, if the amounts withheld are not greater than they would be if the retiree claimed all dependents to which he or she was entitled;

(6) Properly withheld for State income tax purposes, if the amounts withheld are not greater than they would be if the retiree claimed all dependents to which he or she was entitled; or

(7) Already payable to another person based on a court order acceptable for processing or a child abuse judgment enforcement order.

¶23 As noted by Jean, the federal rules provide detailed instruction on procedures for processing court orders affecting employee annuities and awarding former spouse survivor annuities. 5 C.F.R. part 838. Relevant to our analysis, we note that the rules indicate that "[a]ll court orders that do not specify net annuity or self-only annuity apply to gross annuity." 5 C.F.R. § 838.625(c).

¶24 The record in the case before us reveals that at the time Wayne selected his retirement benefits, he could have selected the "self-only annuity" or he could elect to provide Jean with a spouse survivor annuity. When a retiree (or annuitant) elects the self-only annuity, he or she gets the maximum amount offered under the plan but all payments stop when the annuitant dies. However, if the annuitant elects to provide a "survivor annuity," the retiree gets a smaller monthly benefit, but the retiree's survivor gets continued payments after the retiree dies. Wayne elected a smaller monthly benefit amount in order to provide Jean with a survivor annuity.

9

¶25 Presumably, in an effort to display to the court the amount of retirement benefit he had sacrificed in order to provide Jean with a survivor annuity, Wayne indicated in his affidavit that his "gross earned income" was $4,022.00 but that $410.00 was deducted each month in order to provide benefits to Jean after his death. In reality, as of the time Wayne opted to forego a "self-only annuity" and to provide survivor annuity benefits to Jean, his "gross annuity" benefit, as defined above, became $3,612.00 per month. In other words, Wayne never received $4,022.00 per month in retirement income. As a result it was error for the District Court to use this amount in its pension-dividing calculation.

¶26 Additionally, Wayne argues that his check is further reduced by health insurance premiums and federal and state taxes automatically taken out of his check before he receives it. Relying on *Meeks*, Wayne maintains that the District Court should have calculated Jean's monthly benefits using Wayne's "net annuity."

¶27 In previous cases, we have considered two methods for establishing values of pension plans: (1) the present value method (lump sum distribution); and (2) the time rule method (deferred distribution). *In re Marriage of Swanson*, 2004 MT 124, ¶ 21, 321 Mont. 250, ¶ 21, 90 P.3d 418, ¶ 21. While we have said that "[g]enerally, the proper test for determining the value of a pension is the present value," (*see Rolfe v. Rolfe*, 234 Mont. 294, 297, 766 P.2d 223, 225 (1988)), we have also held that a district court did not abuse its discretion when applying the time rule method. *See In re Marriage of Truax*,

271 Mont. 122, 126, 894 P.2d 936, 938 (1995), and *In re Marriage of Robinson*, 269 Mont. 293, 299, 888 P.2d 895, 898-99 (1994).

¶28     In the present case, the District Court elected to use the time rule formula. The "time rule formula," as defined in *Meeks,* is "years of service during the marriage divided by years of total service multiplied by the monthly benefit (*after taxes*) times one-half." *Meeks*, 276 Mont. at 246, 915 P.2d at 837 (emphasis added). *See also Rolfe*, 234 Mont. at 298, 766 P.2d at 226. In the case at bar, the District Court utilized all factors of the *Meeks* time rule formula except the "after taxes" factor. We note that in *Rolfe* and *Meeks*, we expressly stated that the monthly benefit amount to be used in the calculation was the "after tax" amount. We acknowledge, however, that in *Truax* and *Robinson*, we did not so state. Nor did we include the "after tax" distinction in our most recent case discussion of the "time rule formula" in *Swanson.* We conclude today that the more equitable method is to utilize a retiree's net annuity in "time rule formula" calculations.

¶29     Having determined that the District Court erroneously used the "self-only annuity" benefit amount, we reverse the court's division of Wayne's pension and remand to the District Court for re-calculation of Jean's marital portion based upon Wayne's net annuity as defined at 5 C.F.R. § 838.103.

## CONCLUSION

For the foregoing reasons, we reverse the District Court's award of retroactive child support to Jean. We also reverse the court's division of Wayne's monthly retirement benefits and remand for further proceedings consistent with this Opinion.

11

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART