DA 11-0032

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 284

IN RE THE MARRIAGE OF

KAREN ARNESON SPAWN
(f/k/a Karen Spawn McGowan),

        Petitioner and Appellant,

   and

DANIEL WALLACE McGOWAN,

        Respondent, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. CDR-1999-94
                    Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Katharine Donnelley, Attorney at Law, Helena, Montana

       For Appellee:

           Robert T. Cummins, Attorney at Law, Helena, Montana

                           Submitted on Briefs:  September 28, 2011

                                    Decided:  November 15, 2011

Filed:

                                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Karen Arneson Spawn (Karen) petitioned for dissolution of her marriage to Daniel Wallace McGowan (Dan) in the First Judicial District Court, Lewis and Clark County. Following a non-jury trial, the District Court entered Findings of Fact, Conclusions of Law, and a Decree of Dissolution, dissolving the parties' marriage and distributing all property. Karen appeals, and Dan cross-appeals from the District Court's property distribution. We reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

¶2 Karen and Dan were married in 1989. They first separated in 1998; Karen petitioned for dissolution in early 1999. The couple reconciled in 2000 and moved to dismiss the pending dissolution. However, Karen again petitioned for dissolution in 2008. The District Court held hearings on the matter on May 11 and July 9, 2010.

¶3 At the time of marriage, Dan was an employee of the State of Montana. He eventually attained an administrator position that paid approximately $82,000 per year. He was terminated from that position in January 2010, but continues to work another position with the State of Montana earning approximately $37,800 annually. He has a master's degree in security studies from the Naval Postgraduate School. Karen has worked occasionally during the marriage, but has spent the majority of the near 19 years of marriage as a homemaker. At the time of the hearing, Karen was working part time at a local ranch. Karen has a high school education and relative lack of employment skills

2

due to her employment history.  Karen and Dan have two adult children; a child support order is not subject to this appeal.

¶4     Through his employment, Dan has a State of Montana Public Employees' Retirement System (PERS) defined benefit plan.[1]  The parties agree that Dan has over 22 years of service credit and was 53 years old at the time of trial.  Karen sought one-half of the marital portion of the PERS account as retirement income.  Dan sought to be awarded the entire retirement account and contended the value of the account was limited to the amount of his contributions plus interest.  The District Court found that Karen should be entitled to 50 percent of the marital portion of the pension, taking into consideration that the parties were married for almost 19 years, and that Karen has limited employment skills and no other retirement accounts.  The District Court ordered Karen's counsel to prepare a Family Law Order to effect this division.  *See* § 19-2-907, MCA.  The marital duration for calculation purposes was held to be 18 years, 10 months and 19 days.

¶5     As part of the marital estate the District Court also divided a Glacier County, Montana, property that was purchased from Karen's brothers for $25,000 in 2000.  The District Court determined that valuation was not necessary because "Dan has suggested that the parcel be awarded 160 acres to Karen . . . and 80 acres to Dan. . . ."  Dan contends on appeal that he only suggested this division with the understanding that "Karen would not receive any proceeds of his PERS retirement account."

---

[1] State employees become members of the defined benefit plan on the first day of service unless they select membership in the defined contribution plan.  Section 19-3-401, MCA. The defined benefit plan provides a lifetime monthly benefit following retirement based on a formula that calculates age at time of retirement, years of service and salary.  *See generally* "The Public Employees Retirement Systems Act," §§ 19-3-101 et seq., MCA.

¶6 The District Court also awarded Karen $75,000 from the ordered sale of the family's Wylie Drive home, seemingly to reflect that the prior family home—sold to purchase this one—had been a gift from Karen's father. The family's previous home was deeded to Karen by her father in 2001. They resided in the home until its sale in 2004, with Dan's earnings contributing to the support of the family and maintenance of the property during this time. When this home was sold, the proceeds were deposited in the couple's joint bank account and contributed to the purchase of the Wylie Drive home. The District Court denied Dan's claim for reimbursement of $13,635.20 in expenditures he claims to have made on improvements to the Wylie Drive home while he occupied it for a month during the separation.

¶7 Karen raises two issues on appeal which we restate as follows: did the District Court's order provide for an equitable division of the Dan's PERS retirement plan, and did the District Court err in its distribution of the Glacier County Property? Dan cross-appeals the distribution of the Glacier County property in light of the District Court's award to Karen of a portion of his PERS account. He also appeals the $75,000 awarded to Karen from the proceeds of the ordered sale of the Wylie Drive home and the denial of his claimed reimbursement of $13,635.20. We state the dispositive issue as follows:

¶8 *Did the District Court err in its application of the law regarding division of Dan's retirement account?*

STANDARDS OF REVIEW

¶9 Section 40-4-202, MCA, governs the distribution of a marital estate. The District Court is vested with broad discretion to apportion the marital estate in a manner equitable

4

to each party under the circumstances. *In re Marriage of Swanson*, 2004 MT 124, ¶ 12, 321 Mont. 250, 90 P.3d 418. We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Monroe v. Marsden*, 2009 MT 137, ¶ 20, 350 Mont. 327, 207 P.3d 320. "Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion." *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. Although the district court may equally divide the marital assets, an even distribution is not mandated by § 40-4-202, MCA. *In re Marriage of Harris*, 2006 MT 63, ¶ 17, 331 Mont. 368, 132 P.3d 502. As we have stated previously, each case must be looked at individually, with an eye to its unique circumstances. *Harris*, ¶ 17.

## DISCUSSION

¶10 This Court has long held that pension plans are part of the marital estate. *Swanson*, ¶ 21. The question is how to equitably divide such plans. This Court has noted that "such assets contain numerous contingencies, thereby avoiding categorical formulas." *Rolfe v. Rolfe*, 234 Mont. 294, 296, 766 P.2d 223, 225 (1988). The District Court order contains the following division of Dan's PERS account:

> Karen is entitled to receive a withdrawal of 50 percent of the marital portion of Dan's vested account balance in the State of Montana Public Employees' Retirement System (PERS) Defined Benefit Plan as of the date of separation, May 6, 2008, plus regular interest earned on that amount from May 6, 2008, until the date of withdrawal.

¶11 Dan contends that this means 50 percent, plus interest, of the marital portion of the $87,801.25 that the account would be worth if he were to liquidate it in its entirety today.

5

Karen contends that she should have been awarded 50 percent of the marital portion of Dan's benefits, whatever they may turn out to be in the future. The amount in play given these varying interpretations is demonstrated by Dan's 2008 PERS annual statement, which placed his contributions at the time the document was generated at $60,254.69, but estimated the lifetime value of his plan starting at age 60 based upon these contributions at $874,620.36.

¶12    We recognize two methods for establishing the value of pension plans: (1) the present value method (lump sum distribution); and (2) the time rule method (deferred distribution). *Swanson*, ¶ 21. The present value method enables parties to determine and distribute the value of the pension at the time of divorce in a lump sum. *Swanson*, ¶ 22. "With a defined benefit plan, courts usually use actuarial and investment data to help assess the appropriate value and then discount it to a present value." Susan J. Prather, *Comments, Characterization, Valuation, and Distribution of Pensions at Divorce*, 15 J. Am. Acad. Matrim. Law. 443, 456 (1998). "This method is preferred when the pension can be adequately valued and sufficient assets (either cash or property) exist in the marital estate to offset the present value of the non-employee spouse's portion of the pension." Prather, *Comments, Characterization, Valuation, and Distribution of Pensions at Divorce* at 455. Contrary to Dan's contention, there is no legal authority for using the amount paid in as of a particular date as this value. *In re Marriage of Sirucek*, 219 Mont. 334, 341, 712 P.2d 769, 773 (1985).

¶13    One drawback to using the present value method is that "it places the entire risk of forfeiture before maturity on the employee spouse." *Krafick v. Krafick*, 663 A.2d 365,

374 (Conn. 1995). This is because a plan's reduced benefit formulation varies significantly due to individual circumstances such as early retirement or disability. *See Rolfe*, 234 Mont. at 297, 766 P.2d at 225-226. Another drawback of this method is that the "non-employee spouse may receive less if the present value is determined to be significantly lower than the value at actual retirement." Prather, *Comments, Characterization, Valuation, and Distribution of Pensions at Divorce* at 456. In other words, the amount of the employer and employee's future contributions to the retirement plan are a factor of continued employment and monthly salary, an amount that cannot be accurately forecasted. *See Rolfe*, 234 Mont. at 297, 766 P.2d at 225-226. "[D]ue to various contingencies such as unreliable evidence, future contributions and other speculative factors, determining the present value of pension plans is difficult, thus courts apply the time rule method when the district court defers distribution of the marital portion of the pension until payout of the benefit." *Swanson*, ¶ 23.[2] In any event, neither party submitted actuarial nor investment data in the case at bar, and thus present value distribution is not supported by the evidence.

¶14 Karen's briefing requests "50 percent of the marital portion of Dan's benefits, whatever that may turn out to be in the future." It also states her belief that "[t]he district court cannot order a withdrawal from Dan's pension until Dan himself is eligible to receive such payments." To be sure, it is hard to imagine a scenario where an order to

---

[2] While this Court has held that generally the proper test for determining the value of a pension is the present value, this often is not the case. *Kis v. Kis*, 196 Mont. 296, 301, 639 P.2d 1151, 1153 (1982); *but see e.g. In re David*, 2009 MT 422, ¶ 14, 354 Mont. 44, 221 P.3d 1209; *Momsen v. Momsen*, 2006 MT 233, ¶ 27, 333 Mont. 463, 143 P.3d 450; *Swanson*, ¶¶ 22-24; *Rolfe*, 234 Mont. at 297, 766 P.2d at 225.

prematurely liquidate a vested pension with this many years of service, and thus incur a large penalty, would not constitute a substantial injustice to both parties.

¶15 The time rule formula is "used in situations in which the spouse entitled to a retirement benefit has not yet ended employment, so that the retirement benefit is not yet being received." *In re David*, ¶ 11. "'[I]f the court concludes that because of uncertainties affecting the . . . maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid.'" *Rolfe*, 234 Mont. at 299, 766 P.2d at 226 (quoting *In re Marriage of Brown*, 544 P.2d 561, 567 (Cal. 1976)). As such, the time rule affords the non-employee spouse "increases or accruals on his or her interest in the retirement plan because of the delay in receiving that interest." *Rolfe*, 234 Mont. at 299, 766 P.2d at 226. We described the time rule method in *Rolfe*, whereby:

> [T]he marital interest is represented by a fraction, the numerator of which is the length of the employee's service during the marriage, and the denominator is the employee's total length of service. This fraction is then applied to each benefit payment, lump or periodic, to determine the portion earned during the marriage. Although the extent of the marital interest is determined as of the date of the dissolution, the benefit factors to be applied to the pension credits earned during the marriage are those in effect at retirement.

*Rolfe*, 234 Mont. at 298, 766 P.2d at 226.

¶16 We find that the time rule method of valuation is appropriate in this case. Dan is continuing to contribute to the plan, and thus the benefit factors (age at retirement, salary and length of service) cannot be applied until retirement. This method does not require expert or actuarial evidence as Dan contends. Rather, as the District Court did here, a

8

determination of the length of the employee's service during the marriage is all that is required. However, in using the language "vested account balance . . . as of the date of separation . . . until the date of withdrawal," the District Court has unnecessarily confused the award, and has created, as this Court stated in *Swanson*, "a hybrid approach clearly not supported by any Montana or other jurisdiction's case law." *Swanson*, ¶ 24. The District Court's conclusions of law were not correct.

¶17 To properly divide Dan's pension, the District Court must use the formula this Court adopted in *Rolfe* to establish the marital value of the pension plan and assign a percentage that Karen is entitled to at the time of payout. Following remand, the District Court will have the discretion to recalculate all remaining issues including the distribution of the Glacier County property.

CONCLUSION

¶18 We reverse the order of the District Court and remand for a new distribution of the marital estate consistent with this Opinion.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

9