No. 87-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE CUSTODY OF
J.H., S.H., AND Ja.H.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kevin T. Sweeney, Sweeney and Healow; Billings, Montana

For Respondent:

George W. Huss, Brown and Huss; Miles City, Montana

---

Submitted on Briefs: February 18, 1988

Decided: March 29, 1988

Filed: MAR 2 9 1988

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The marriage of J.(H.)R. (mother) and T.H. (father) was dissolved in 1982. The parents share joint custody of their children. Here, the mother appeals the decision of the District Court for the Sixteenth Judicial District, Custer County, that the children will reside with the father during the school year. We affirm.

The sole issue on appeal is whether the District Court erred in not directly asking the children, and in not allowing counsel to ask them, which parent they would prefer to live with during the school year.

At the time of the dissolution of marriage, both parents lived in Miles City, Montana. The parents' custody agreement originally provided that their two daughters, J. and S., and their son, Ja., would reside with the mother from January 1 to June 30 of each year and with the father from July 1 to December 31 of each year. The father has remarried and the children have a stepmother and three stepsiblings in that household.

In the fall of 1985, the parents agreed that it would be in the children's best interest if they resided with one parent for the entire school year and the other parent for the entire summer. The agreement was formalized in a written stipulation filed with the court. The children lived with the father for the entire 1985-86 school year.

In July of 1986, the mother moved to Billings, Montana, and the children went with her pursuant to her summer custody right under the modified custody agreement. The father then petitioned for a determination of where the children should attend school in 1986-87. The hearing was not scheduled until October. On August 26, the court made a temporary order that the children should be returned to Miles City to

start the school year. The mother received notice of that hearing on August 29. She reported that as she and her daughters were discussing that order, the daughters told her that they had been sexually abused by their stepbrother in Miles City.

The Yellowstone County Office of Human Services investigated the abuse allegations. The daughters and their stepbrother have had a series of professional counseling sessions. In these sessions, one of the daughters has withdrawn her claim of sexual abuse, and the psychologist has essentially concluded that the other daughter's claim is untrue. The children remained in Billings with the mother throughout this period. In May 1987, on motion of the Montana Department of Social and Rehabilitation Services, the abuse proceedings were dismissed. In June 1987, the father renewed his petition for interpretation of the joint custody provisions, and also moved for and was granted temporary custody for the summer.

At the time of the hearing, J. was age 10, S. was age 8, and Ja. was age 7. Each parent presented testimony as to their own suitability as school-year custodian of the children. Also before the court was the deposition of the psychologist who had counseled the girls concerning the sexual abuse report. The court interviewed the two girls in chambers, in the presence of counsel for both parents.

In its findings and conclusions, the court reviewed, as to each parent's household, the children's familiarity with the school they would be attending, their opportunities for contact with extended family, their integration into the family, the stability of the family, and the physical and mental health of each parent. While it found both parents were fit as custodians, it also found that in the father's home the children would have greater opportunity for contact

3

with extended family, would attend a school with which they were familiar, and would have the benefit of a stepmother and stepsiblings with whom they have integrated well. The court found that the children were "too young to express any type of a binding wish as to residential custody." It further found that "given the youth of the children, this Court is not willing to place the children in a position to have to make such decision." The court concluded that the children should reside with their father during the school year. The mother appeals.

Did the District Court err in not directly asking the children, and in not allowing counsel to ask them, which parent they would prefer to live with during the school year?

Modification of the physical custody provisions of a joint custody decree is governed by § 40-4-212, MCA. In re Marriage of Paradis (Mont. 1984), 689 P.2d 1263, 41 St.Rep. 2041. Section 40-4-212, MCA, provides:

> The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors, including but not limited to:
> (1) the wishes of the child's parent or parents as to his custody;
> (2) the wishes of the child as to his custodian;
> (3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
> (4) the child's adjustment to his home, school, and community;
> (5) the mental and physical health of all individuals involved;
> (6) physical abuse or threat of physical abuse by one parent against the other parent or the child; and

4

(7) chemical dependency, as defined in
53-24-103, or chemical abuse on the part of either
parent.

In several opinions, this Court has discussed the requirement
under this section that the child's wishes be considered. A
district court was required to make specific findings stating
the wishes of children ages 15, 13 and 11 as to their custo-
dian. In re Marriage of Kramer (1978), 177 Mont. 61, 580
P.2d 439. This Court held that the lower court must give a
reason if the wishes of the children were not followed.
Kramer, 580 P.2d at 444. Although a district court is not
always required to make specific findings on each element
under § 40-4-212, MCA, there should be an indication that the
court considered all factors. Speer v. Speer (1982), 201
Mont. 418, 654 P.2d 1001; In re Marriage of Keating (Mont.
1984), 689 P.2d 249, 41 St.Rep. 1865. The court must set
forth the facts upon which its conclusion under § 40-4-212,
MCA, is based. In re Marriage of Hardy (Mont. 1984), 685
P.2d 372, 41 St.Rep. 1566. Most recently, we have held that
district courts must consider the children's wishes as to
their custodian and make findings as to their wishes or why
those wishes were not followed. In re Custody of C.C. (Mont.
1985), 695 P.2d 816, 42 St.Rep. 190. In that case, the
record contained no evidence on the children's wishes.
Recognizing that because of their ages their wishes may have
little weight, we nevertheless remanded for inclusion of
evidence of their wishes.

In the present case, the psychologist stated that it was
very important that the court elicit and consider J.'s and
S.'s wishes as to where they would like to live. She testi-
fied that the girls wouldn't object to switching back and
forth between the two households, so long as they could be in
one household for the full school year. The mother and the

5

stepmother each testified that the children would like to live in their respective households.

The court interviewed J. and S. at some length in chambers. Without directly asking with which parent they would prefer to live during the school year, the court asked other questions about which place they preferred. The girls did not indicate any preference between the schools in Billings and in Miles City, although when asked again by counsel, J. said she liked her school in Billings "a little more." The girls said that both parents had nice houses. They said they liked their mother's boyfriend, their father's wife, and their stepsiblings. They said they liked to go hunting in the fall with their dad.

In response to counsel's questioning in the judge's chambers, the girls repeated their allegation of sexual abuse by their stepbrother. They stated that they are not now afraid of him, however. It is important to note that the investigation of the claim has resulted in a dismissal of the abuse proceedings. We also reiterate that in extensive counseling sessions, one of the girls has withdrawn her allegation and the psychologist has concluded that the alleged sexual abuse did not occur. The psychologist testified that the girl who continues to claim the sexual abuse occurred should remain in counseling, wherever she lives.

We refuse to state categorically, as the mother would have us do, that because a district court has failed to directly ask the children which parent they would rather live with, the judgment must be reversed. Where, as here, the court has received evidence on and made findings on the wishes of the children as to their custodian, we will not disturb the discretion of the court. Because no suggestion has been made that the three children should be split up, we further conclude that the mother has not shown that the court

abused its discretion in failing to interview the youngest child, the 7-year old boy.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices