

DA 10-0451

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 98

IN RE THE PARENTING OF N.S.,

  Minor Child:

SETH R. HILLIARD,

  Petitioner and Appellee,

 and

VALERIE SMITH,

  Respondent and Appellant.

APPEAL FROM: District Court of the Seventh Judicial District,
      In and For the County of Richland, Cause No. DR 09-42
      Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Phillip N. Carter, Attorney at Law, Sidney, Montana

   For Appellee:

   Stephen C. Mackey, Towe, Ball, Enright, Mackey & Sommerfeld, PLLP,
   Billings, Montana

         Submitted on Briefs: March 23, 2011
              Decided: May 10, 2011

Filed:

    _____
         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Valerie Smith (Smith) appeals from an order of the Seventh Judicial District Court, Richland County, naming Seth Hilliard (Hilliard) as the primary residential parent of N.E.S. and directing Smith to pay child support.  We affirm in part and reverse in part.

¶2    We review the following issues on appeal:

¶3    *Whether the District Court wrongly named Hilliard as the primary residential parent of N.E.S.*

¶4    *Whether the District Court properly calculated Smith's child support obligation.*

¶5    *Whether the District Court afforded Smith a fair trial.*

FACTUAL AND PROCEDURAL HISTORY

¶6    Smith and Hilliard had one child together, N.E.S.  Smith and Hilliard never married and the couple split up shortly after Smith became pregnant with N.E.S. in 2000.  Hilliard knew Smith was pregnant when they separated, but he did not spend any time with N.E.S. until 2005 or 2006.  Hilliard apparently spent N.E.S.'s early years incarcerated for reasons not disclosed in the record.  Hilliard began paying child support to Smith in 2003 at Smith's request and he had regularly made payments up until August 2009 when N.E.S. lived with him full time.  N.E.S. spent his early childhood in Red Lodge, Montana, with Smith where he attended pre-school through second grade.

¶7    Hilliard began seeing N.E.S. in the summers from the time that N.E.S. was five or six years old.  Hilliard lives in Sidney, Montana, with his wife and three young children.  The record does not demonstrate definitively the extent of each of the summer visits between

2

Hilliard and N.E.S. The District Court concluded that Hilliard had parented N.E.S. during the summers from 2006-2009, but Smith argues that Hilliard parented N.E.S. only during the summers of 2008-2009. Smith testified that she allowed Hilliard to take N.E.S. for the summers of 2008 and 2009 as long as he returned N.E.S. in time to start school in the fall. Hilliard did not return N.E.S. to Smith after the summer of 2009.

¶8 Hilliard instead petitioned the District Court *pro se* to establish a permanent parenting plan for N.E.S. Smith did not respond to Hilliard's court proceeding because she could not afford counsel. The court entered a default judgment in Hilliard's favor in September 2009. Smith hired an attorney in February of 2010 and filed a motion to set aside the default judgment. The court granted Smith's motion and set a new trial for August 2010 to establish a permanent parenting plan for N.E.S.

¶9 The District Court heard evidence regarding N.E.S.'s relationship and family life with both parents. The court interviewed N.E.S. in chambers. N.E.S. testified that he had a great relationship with both parents and the record demonstrates that he has succeeded in school in both Sidney and Red Lodge. N.E.S. told the court about his daily life with each parent.

¶10 Smith has seven other children. She has two adult daughters living in Red Lodge. She also has three children under the age of eighteen who live with their respective fathers in Red Lodge. Smith's eighteen-year-old son, Teddy, and her fourteen-year-old daughter, Brandi, both live with her full-time. At the time of the trial Smith recently had moved to Billings and had planned for N.E.S. to attend school there. Smith previously had worked at the Red Lodge Café as a waitress, but Smith did not yet have employment in Billings. Smith

3

planned to waitress full-time in Billings. Smith lives in a three bedroom apartment in Billings. N.E.S. shares a room with Brandi when he lives with Smith. N.E.S. spent most of his afternoons after school at the Boys' and Girls' Club in Red Lodge. None of the testimony indicated how N.E.S. would spend afternoons in Billings.

¶11    Hilliard has three children with his wife Heather, all who live with him in Sidney. The family shares a three bedroom house. Hilliard, Heather, and N.E.S.'s six-month-old half-brother share one room, N.E.S.'s seven-year-old half-sister, Erin, has her own room, and N.E.S. shares a room with his three-year-old half-brother, Taylor. N.E.S. rides the bus home and Hilliard's wife, Heather, supervises him after school in Sidney. Heather cooks for the family and N.E.S. plays outside with neighborhood children. Hilliard works full-time at Agri-Industries and testified that he would be able to obtain health insurance for N.E.S. through his employer. Smith did not provide any evidence of available health insurance for N.E.S.

¶12    N.E.S. testified that he got along great with both parents, but he decided a week before trial, in the middle of two weeks he spent with Smith, that he preferred to live with Smith. N.E.S. testified that he preferred to live with Smith because he was tired of his younger half-sister, Erin, bothering him at Hilliard's house. N.E.S. also testified that Smith is a better cook than Heather because she makes Hot Pockets, steak, and leftovers, whereas Heather makes something different every night including Hamburger Helper, casseroles, and tacos.

¶13 The evidence presented establishes that neither parent abuses any substances. Neither parent physically abuses N.E.S. or one another. Hilliard presented evidence of Smith's then seventeen-year-old son Teddy, who lives with Smith, drinking alcohol with Smith's purported ex-boyfriend. Hilliard fears that N.E.S. does not receive proper discipline or supervision while living with Smith. Both parents agree that N.E.S. should not be around people who abuse alcohol.

¶14 The District Court entered a final parenting plan for N.E.S. that placed N.E.S.'s primary residence with Hilliard. The court concluded that it was in N.E.S.'s best interest to live primarily with Hilliard in Sidney during the school year and with Smith during the summer, despite N.E.S.'s wishes to live primarily with Smith. The court reasoned that Hilliard provided a more stable home life and provided N.E.S. continuity and stability of care. The court also ordered both parties to submit the appropriate child support documentation. The court imputed income to Smith based on a forty hour work week and calculated child support pursuant to § 40-4-204, MCA. The court ordered Smith to pay Hilliard $197 per month in child support. Smith appeals.

STANDARD OF REVIEW

¶15 We review for clear error a district court's findings in a child custody decision. *In re Marriage of Dennison*, 2006 MT 56, ¶ 13, 331 Mont. 315, 132 P.3d 535. We may reverse the district court's findings of facts if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that the trial court made a mistake. *Id.* We review for

5

correctness the district court's application of statutes and regulations. *Kulstad v. Maniaci*, 2009 MT 326, ¶ 50, 352 Mont. 513, 220 P.3d 595.

DISCUSSION

¶16 *Whether the District Court wrongly named Hilliard as the primary residential parent of N.E.S.*

¶17 Smith cites the fact that she parented N.E.S. from his birth in 2000 through the court's order in 2010 to support her claim that N.E.S. belongs with her. Smith points out that she provided N.E.S. with a safe home, that she never abused N.E.S. in any way, and that she never abused drugs or alcohol in any way. No one disputes any of Smith's claims. We must take issue, however, with her effort to liken the proceeding in the District Court to a parental termination proceeding pursuant to a dependent and neglect claim. The District Court did not evaluate Smith's fitness as a parent in determining that N.E.S. should live primarily with Hilliard. The court instead applied the best interest of the child standard used in custody proceedings. Section 40-4-212, MCA. We too must apply this standard.

¶18 The District Court sits in the best position to evaluate the best interest of the child. *In re Marriage of Toavs*, 2006 MT 68, ¶ 8, 331 Mont. 437, 133 P.3d 202. Child custody cases often present the court with difficult decisions. We must presume that the court carefully considered the evidence and made the correct decision. *Id.* at ¶ 13.

¶19 Smith argues that the District Court failed to state the reason that it chose not to follow N.E.S.'s wishes to live with Smith. *In re Custody of J.H.*, 231 Mont. 301, 304, 752 P.2d 194, 195 (1988). The court interviewed N.E.S. in chambers in accordance with § 40-4-

6

214, MCA. The court recorded the interview and made it part of the record in this case. Section 40-4-214, MCA. The court also made a specific finding of fact regarding N.E.S.'s wishes. *In re Custody of J.H.*, 231 Mont. at 304, 752 P.2d at 195. N.E.S. stated that he would prefer to live in Billings with Smith.

¶20 We do not require the district court to follow the child's wishes. *In re Marriage of Kovash*, 260 Mont. 44, 51, 858 P.2d 351, 355-56 (1993). The court must give a reason, however, as to why it did not follow the child's wishes. *In re Custody of J.H.*, 231 Mont. at 304, 752 P.2d at 195. The District Court concluded that N.E.S. should live primarily with Hilliard because Hilliard provided a "more stable home life and can provide N.E.S. continuity and stability of care." *Id.*

¶21 The district court assesses the ability of a child to formulate and articulate his custody wishes and must weigh that preference in light of the other evidence and factors enumerated in § 40-4-212, MCA. *In re Marriage of Murphy*, 205 Mont. 162, 165, 666 P.2d 755, 757 (1983). The court questioned N.E.S. in chambers. N.E.S. testified that he liked living with both parents. The court concluded that N.E.S.'s primary reason for choosing Smith related to his annoyance with his younger sister in Sidney. The court did not abuse its discretion when it concluded that it was in N.E.S.'s best interest to reside primarily with Hilliard despite N.E.S.'s wishes to live with Smith. *In re Custody of J.H.*, 231 Mont. at 304, 752 P.2d at 195. The court properly stated its reason—the court concluded Hilliard provided more continuity and stability of care for N.E.S. *Id.*

¶22 Smith also argues that the record lacks evidence to support the court's following findings: (1) that N.E.S. lives with three younger siblings in Sidney, Montana, (2) that Hilliard parented N.E.S. during the summers of 2006 and 2007, (3) that N.E.S. earned mostly A's during the school year in Sidney, (4) that Hilliard had any telephone contact with N.E.S. before 2006, and (5) that Hilliard is better able to provide more continuous or stable care of N.E.S. in Sidney.

¶23 The parties presented contrary evidence as to the extent of Hilliard's previous relationship with N.E.S. Hilliard testified in 2009 that he had spent the past two or three summers with N.E.S., that he had seen N.E.S. every summer since 2006, and that he had first spent time with N.E.S. in October 2005. Hilliard also maintained that he had called Smith before 2005 and that his family's first contact with N.E.S. went back to before 2005 when his mother had visited N.E.S. in Red Lodge.

¶24 Smith testified that N.E.S. spent the summers of 2008 and 2009 with Hilliard and that Hilliard's first contact with N.E.S. took place in 2006. Smith confirmed that Hilliard's mother had visited N.E.S. The District Court stated in its findings that Hilliard had "parented N.E.S. during the summer of 2006, the summer of 2007, the summer of 2008 and since June 2009." The court did not describe the extent of Hilliard's parenting over the course of each summer.

¶25 Smith argues that insufficient evidence supports the court's finding that Hilliard had parented N.E.S. during the summers of 2006 and 2007. Smith bases her argument on Hilliard's testimony that he had only spent a few hours at Smith's house in both 2006 and

8

2007.  Smith asked Hilliard on cross-examination how he had concluded that Smith did not discipline N.E.S.  Hilliard admitted that he had spent only a few hours at Smith's house during the summers of 2006, 2007, 2008, and 2009.  Hilliard's admission that he had spent only a few hours at Smith's house does not necessarily establish, however, that Hilliard spent only a few hours with N.E.S. each summer.  The court could have deduced that Hilliard only spent a few hours at Smith's house when he picked up and dropped off N.E.S. after longer visits.  The parties presented contradictory testimony.  The district court determines the credibility of the witnesses and the weight assigned to their respective testimony.  *Kulstad*, ¶ 52; *In re Marriage of McKenna*, 2000 MT 58, ¶ 17, 299 Mont. 13, 996 P.2d 386.  Substantial credible evidence in the record supports the District Court's finding.  *Kulstad*, ¶ 51.

¶26    Smith challenges whether Hilliard presented any substantial credible evidence that he had any children other than N.E.S. or that N.E.S. received mostly A's in Sidney.  Hilliard represented himself *pro se* in the District Court proceedings.  Hilliard did not mention his three younger children at any point during the proceedings.  Hilliard also did not submit evidence of N.E.S.'s grades.  The court interviewed N.E.S. in chambers, however, and that interview became part of the record.  Section 40-4-214, MCA.  N.E.S. testified in the interview that he had received mostly A's during the school year in Sidney.  N.E.S. also provided the court a detailed description of his home life with Hilliard, including the names and ages of his younger siblings and his relationship with them.  Substantial credible evidence in the record supports the court's findings on these matters.

9

¶27 Smith suggests that the record lacks substantial credible evidence to support the court's finding that Hilliard's home situation provides more continuous and stable care for N.E.S. Hilliard testified that N.E.S. has continual adult supervision, more discipline, and a more stable environment in Sidney. Smith recently had moved to Billings. Smith did not explain whether she would provide adult supervision for N.E.S. after school in Billings. N.E.S. usually went to the Boys' and Girls' Club after school in Red Lodge. The district court bears the difficult responsibility of determining the best interest of the child in accordance with § 40-4-212, MCA. Hilliard's testimony and N.E.S.'s testimony support the court's decision. Substantial credible evidence in the record supports the District Court's finding. *In re Marriage of Dennison*, ¶ 13.

¶28 *Whether the District Court properly calculated Smith's child support obligation.*

¶29 Smith argues that the District Court improperly imputed income, wrongfully added her federal earned income credits (EIC) to her income, and failed to require Hilliard to swear to the accuracy of his financial documents. Section 40-4-204, MCA, governs a district court's resolution of child support issues. Section 40-5-209, MCA, provides that the district court must follow child support guidelines in all cases unless the court finds by clear and convincing evidence that applying the guidelines would be unjust to the child or the parties. Section 40-4-204(3)(a), MCA; *In re Marriage of Williams*, 2009 MT 282, ¶ 27, 352 Mont. 198, 217 P.3d 67.

¶30 The District Court ordered the parties to submit (1) a Montana Child Support Guidelines Financial Affidavit and (2) a Montana Child Support Worksheet in order to

10

calculate child support for N.E.S. in accordance with § 40-4-204, MCA. The court considered the factors outlined in § 40-4-204, MCA, including the financial resources of each parent. Smith recently had quit a waitressing job in Red Lodge and had moved to Billings. She testified that she would work full-time in Billings. The court determined that it should impute income to Smith for a forty hour work week as a result of her unemployed status.

¶31    The administrative rules provide additional requirements the court must follow when calculating child support. Admin. R. M. 37.62.106(7) provides that the court should impute income whenever a parent is unemployed or underemployed. A court may impute income to a parent who is voluntarily unemployed or underemployed based upon the parent's capacity and ability to earn. *In re Marriage of Dennison*, ¶ 18; *In re Marriage of Bee*, 2002 MT 49, ¶ 22, 309 Mont. 34, 43 P.3d 903. A parent testified in *Dennison* that she worked part-time and that she could obtain full-time work if she wished. *In re Marriage of Dennison*, ¶ 19. The Court concluded that the district court abused its discretion when it did not impute income to the parent under these circumstances. *Id.*

¶32    Hilliard asked Smith how she planned to support N.E.S. given that she did not have full-time employment. Smith testified that she planned to get full-time work once school started for N.E.S. and that she would be working day shifts in Billings. It appears from the record that Smith voluntarily quit her job to move to Billings. The court reasonably relied upon Smith's own testimony that she would be employed full-time in the near future. The

11

court did not abuse its discretion when it imputed income to Smith in order to calculate child support. *Id.*

¶33 Admin. R. M. 37.62.106(8) provides that the court should not add a parent's EIC to the parent's income when the court imputes income. The court issued its order setting child support in this matter according to the Montana Child Support Guidelines Worksheet A. The court attached Worksheet A to its order. The court made several errors in calculating Smith's income on the Montana Child Support Guidelines Worksheet A. The court improperly added Smith's EIC to her total income. Admin. R. M. 37.62.106(8). Smith's EIC equals one-third of her imputed income and increases her total income substantially. The court also wrongly characterized Smith's imputed income as actual income on Worksheet A. The court violated Admin. R. M. 37.62.106(8) when it incorrectly calculated Smith's income. *Kulstad*, ¶ 50.

¶34 *Whether the District Court afforded Smith a fair trial.*

¶35 Smith argues that the District Court did not afford her a fair trial. Smith cites to the court's failure to provide Smith with Hilliard's financial information. Smith claims that this omission prevented her from cross examining Hilliard regarding his financial statements. Smith claims that the court exceeded the scope of § 40-4-214, MCA, when it asked N.E.S. questions about matters other than N.E.S.'s wishes as to residential and parental contact. Smith also contends that the court should have allowed her to cross-examine N.E.S.

¶36 The record lacks any evidence that Smith argued to the District Court that it must allow her to examine Hilliard's Financial Affidavit and Worksheet and must afford her the

opportunity to cross-examine Hilliard about the financial statements. Smith makes this argument for the first time on appeal. We will not review arguments that a petitioner presents for the first time on appeal. *Foston v. State*, 2010 MT 281, ¶ 10, 358 Mont. 469, 245 P.3d 1103.

¶37 The court interviewed N.E.S. in chambers in order to determine N.E.S.'s preference for the primary residential parent. The court did not ask N.E.S. simply where he wished to live. The court instead asked N.E.S. a series of questions about his life with each parent and what he liked or disliked about each parent's home. The court's questions related to its determination of N.E.S.'s wishes as to residential and parental contact. Smith does not direct this Court to any authority, and we are aware of none, to support her argument that the court may not ask a child about the child's life with each parent in order to evaluate more accurately a child's wishes in accordance with § 40-4-212, MCA.

¶38 In fact, this Court has stated that "it is often important for the judge to discover the attitudes and wishes of the child." *In re M.L.H.*, 220 Mont. 288, 292-93, 715 P.2d 32, 34-35 (1986). The Court in *In re M.L.H.* further determined that no reason exists "to subject the child to the formality of the courtroom and the unpleasantness of cross-examination," during the course of the interview process pursuant to § 40-4-214, MCA. *Id*. We agree. Nothing in § 40-4-214, MCA, requires the court to give the parties an opportunity to cross-examine the child. The court must make a record of the interview available to the parties. *In re M.L.H.*, 220 Mont. at 292-93, 715 P.2d at 35. The District Court complied. The court did not abuse its discretion when it interviewed N.E.S. in chambers. *Id.*

13

CONCLUSION

¶39     We affirm the District Court's Final Parenting Plan.  We remand the child support

award to the District Court for recalculation in accordance with this opinion.  Smith can

challenge the validity of Hilliard's financial statements, through cross-examination or other

means, during any proceedings conducted by the District Court.


/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE