DA 11-0732

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 135N

IN RE THE MARRIAGE OF
AYLYNN KING, kna AYLYNN MATTE,

      Petitioner and Appellant,

  and

JOSEPH KING,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DR 10-106
Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lindsay A. Lorang, Karen M. Alley; Lorang Law, PC; Havre,
Montana

      For Appellee:

          Randy H. Randolph; Randolph Law Firm; Havre, Montana

Submitted on Briefs:  May 30, 2012

Decided:  June 26, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by noncitable opinion and does not serve as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The Twelfth Judicial District Court entered a decree in November 2011, dissolving the marriage of Petitioner Aylynn King (Aly) and Joseph King (Joe) and establishing a parenting plan with respect to their two-and-a-half-year-old child, B.K. Aly challenges (1) the District Court's denial of her request to change the child's surname to Matté, the surname that was restored to Aly after the dissolution, and (2) the parenting plan, which provides that B.K. will reside with Joe two days a week during most of the year, and five to seven days a week for about six weeks each summer. We affirm.

¶3 Because we have classified this case as a noncitable opinion under Section I, Paragraph 3(c) of our Internal Operating Rules, we will not provide a detailed statement of facts or law. We have taken into account that B.K. was born about a month before the marriage of Aly and Joe, and that Joe is not B.K.'s biological father. B.K. lived with both Aly and Joe from infancy, and Joe adopted her when she was about one year old. Shortly after the parties separated in October 2010 (when B.K. was about one-and-a-half years old), Joe, at Aly's request, signed a petition to relinquish his rights as B.K.'s father. Within a month, the petition had been denied. Since then, Joe has expressed a strong desire to maintain his role as B.K.'s father through shared custody and child support payments. The District Court found that B.K. has developed close ties with the extended families of both Aly and Joe.

2

¶4     Both of the issues raised in this appeal are governed by review standards that call for great deference to a trial court's determinations.  A district court has "broad discretion when considering the parenting of a child. 'Child custody cases often present the court with difficult decisions.  We must presume that the court carefully considered the evidence and made the correct decision.'"  *In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28 (quoting *In re Parenting of N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863).

¶5     The standard of review for both a parenting plan and a decision regarding the change of a child's name is whether the district court abused its discretion in reaching the conclusions it did.  *Tummarello*, ¶ 21 (parenting plan); *In re Custody of J.C.O.*, 1999 MT 325, ¶ 7, 297 Mont. 327, 993 P.2d 667 (change of child's name).  Furthermore, judgments regarding the credibility of witnesses and the weight to be given their testimony are within the province of the District Court, and we will not substitute our judgment for its determinations.  *Tummarello*, ¶ 34.

¶6     As is the case with many acrimonious dissolutions of marriage, this case presented conflicting accusations from the parties.  Aly and Joe each testified at the final parenting plan hearing and each called additional witnesses.  After listening to all sides, the District Court determined that both Aly and Joe had engaged in poor behavior that demonstrated an inability to treat each other with maturity, respect, or civility, to the detriment of B.K.  Nevertheless, after considering all the testimony, the court found that both parties were able to care for B.K. and that it was in B.K.'s best interest to have continuing and frequent contact with both parents.  The court also determined that Aly had not carried her burden of proving that changing B.K.'s surname would be in the child's best interest.

¶7     Given the deference that we appropriately give to district courts in cases such as this, we find no basis on which to reverse the court's decisions here.  It is not the appellate court's

prerogative to determine in the first instance what is an appropriate parenting plan for the parties' child. Having observed and listened to the parties and heard the evidence concerning their interactions with B.K. and her relationship with their families, Judge Boucher was in the best position to judge the child's best interest. His findings are supported by substantial evidence in the record and his parenting plan is consistent with the statutory preference for "frequent and continuing contact with both parents." Section 40-4-212(1)(l), MCA.

¶8    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable opinions. This appeal presents no constitutional issues or issues of first impression. It does not establish new precedent or modify existing precedent. In our opinion, it would not be of future guidance for citation purposes to the citizens of Montana, the bench, or the bar. The District Court did not abuse its discretion in denying Aly's request to change B.K.'s surname, or in adopting the parenting plan. The District Court's decree of November 30, 2011, is affirmed.


                                              /S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE

4