DA 12-0022

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2012 MT 212

IN RE THE PARENTING OF:

C.W. and S.W.,

      Minor Children,

SARAH LOUISE WHEELDON,

      Petitioner and Appellee,

   and

COREY JAMES WHEELDON,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 09-0594
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Frederick W. Snodgrass; Snodgrass, Copenhaver & Yasenak, PLLC,
Billings, Montana

      For Appellee:

            Linda L. Harris; Harris Law Firm, P.C., Billings, Montana

                  Submitted on Briefs:  August 22, 2012

                  Decided:  September 25, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Sarah Louise Wheeldon (Sarah) petitioned for dissolution of her marriage to Corey James Wheeldon (Corey) in the Thirteenth Judicial District, Yellowstone County on April 20, 2009. Following a bench trial, the District Court issued findings of fact, conclusions of law, and a decree of dissolution that dissolved the parties' marriage and divided the remaining marital estate. Corey appeals the District Court's division of assets and the court's order granting Sarah primary residential custody of the parties' two children. We affirm.

¶2 Corey presents the following issues for review:

¶3 Issue One: Whether the District Court erred by granting Sarah primary residential custody of the children.

¶4 Issue Two: Whether the District Court erred in its division of the parties' marital assets and liabilities.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Corey is a deputy sheriff with the Yellowstone County Sheriff's Department (the Sheriff's Department) and lives in Shepherd, Montana. Sarah is currently an agent for the Federal Bureau of Investigation (FBI) with the Behavior Analysis Unit (BAU) and lives near Boston, Massachusetts. Before being hired by the FBI, Sarah lived in Shepherd and worked as a therapist at the Mental Health Center in Billings. The parties were married in July of 2001 and have two children together, C.W. and S.W. Sarah petitioned for dissolution of their marriage on April 20, 2009.

2

¶6 Corey and Sarah both continued to live in Shepherd and co-parent the children until Sarah left to train for the FBI in February of 2011. The FBI training is a five-month program conducted in Quantico, Virginia, so when Sarah left Shepherd C.W. and S.W. moved in with Corey. Sarah completed her training in August of 2011 and was assigned to the BAU in Boston.

¶7 The District Court held hearings on August 12, August 15, and September 28, 2011. Among the witnesses who testified at trial were the parties, a court services evaluator who had conducted an extensive parenting plan study, and a psychologist who had conducted psychological evaluations of the children. On October 11, 2011, the District Court issued findings of fact and conclusions of law, and three days later it entered a final decree of dissolution of marriage and issued a final parenting plan and order.

¶8 Among other things, the court's orders granted Sarah primary residential custody of the children and divided the marital assets and liabilities. Specifically, the District Court awarded Corey half of the proceeds from the sale of the parties' marital home, a 2006 Dodge pickup truck, half of the marital portion of his defined benefit retirement account through the Sheriff's Department, and assigned him a debt that the parties incurred to fix the roof of their home before they sold it. The court awarded Sarah half of the proceeds from the sale of the marital home, a 2002 Hundai Sonata, the entire value of her retirement account through the Mental Health Center, half of the marital portion of Corey's retirement account, and assigned her the entire marital portion of a student loan debt in her name. The court also required Corey to pay Sarah $2,753 as an equalization

3

payment so that each party received a net benefit of $15,200 plus half of the marital portion of Corey's retirement benefit when he retires.

¶9    After the trial Corey filed a motion to amend the final decree pursuant to M. R. Civ. P. 59(g) or in the alternative to set it aside under M. R. Civ. P. 60(b). The District Court partially granted Corey's motion to amend the amount of child support that he must pay, but it denied his motion in all other respects. Corey now appeals the final decree of dissolution of marriage and the court's partial denial of his post-trial motion.

## STANDARD OF REVIEW

¶10    We review a district court's factual findings regarding a parenting plan and the division of marital assets to determine if they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont 387, 270 P.3d 28. A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review convinces us that the district court made a mistake. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. We will affirm the district court when the findings of fact are not clearly erroneous unless the court abused its discretion. *In re Marriage of Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499. A district court abuses its discretion in a dissolution proceeding if it acts arbitrarily without employment of conscientious judgment or it exceeds the bounds of reason resulting in a substantial injustice. *Marriage of Tummarello*, ¶ 21.

## DISCUSSION

¶11    *Whether the District Court erred by granting Sarah primary residential custody of the children.*

4

¶12 Corey argues on appeal that the District Court misapprehended the effect of the evidence and abused its discretion when it granted Sarah primary residential custody of the children. His argument is primarily based on the fact that living with Sarah means the children will have to move from Shepherd, their life-long home, even though C.W. was diagnosed with an adjustment disorder and all of the children's friends and family live in Montana. Corey essentially argues that the potentially detrimental effects moving to another state might have on the children did not weigh heavily enough in the court's determination of what is in the children's best interests.

¶13 We have routinely held that the district court is in the best position to evaluate the best interests of the children. *In re Parenting of N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863. Simply asserting that the district court misapprehended the effect of the evidence will not cause us to abandon this principle. On appeal we will presume that the district court carefully considered all of the evidence and made the correct decision. *Parenting of N.S.*, ¶ 18.

¶14 The District Court specifically addressed relevant parenting factors in its findings of fact, including those listed in § 40-4-212, MCA. Relying heavily upon the parenting plan study, the court found that although moving would require an adjustment, the benefit of living with Sarah in Boston would far outweigh the detriment to the children. Based on substantial evidence, the court found that Sarah has a better understanding of C.W. and S.W.'s emotional needs, is more in-tune with the children, has more time to parent during the school year, and is more likely to ensure both parents have frequent contact with the children. Conversely, the court found that Corey has a very limited

5

understanding of the children's developmental and emotional needs, has a controlling and rigid parenting style, and isolated C.W. and S.W. from their friends and family when he was the custodial parent.

¶15 After reviewing the record before us, we cannot say the District Court abused its discretion or misapprehended the effect of the evidence. While moving to a new area may be difficult for the children at first, all relevant factors must be considered when determining the children's best interests. Based on all of the evidence, the court acted well within its discretion when it named Sarah as the primary residential parent.

¶16 *Whether the District Court erred in its division of the parties' marital assets and liabilities.*

¶17 Corey also alleges the District Court erred in a number of ways when it divided the marital estate. First, he argues the court erred by assigning him the entire debt the parties incurred to fix the roof of their home, which was necessary before they could sell the house. Corey argues that because Sarah was awarded half of the proceeds from the sale of the home, the roofing debt should have been included as part of the marital estate and split evenly among the parties.

¶18 Section 40-4-202, MCA, vests the district court with broad discretion to equitably divide the marital estate under the circumstances. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. An equitable division does not require that every marital asset or liability be split evenly. An equitable division does not even require that the entire estate be split evenly, although the District Court chose to do just that. The District Court awarded assets and assigned liabilities to both Sarah and Corey in a

6

manner it deemed equitable. After all of the assets and liabilities were divided, both Corey and Sarah received a net benefit of $15,200 and half of the marital portion of Corey's retirement account. The roofing debt was included in the court's division of the marital estate. The fact that the entire debt was ultimately assigned to Corey does not mean it was not included as part of the marital estate. It was not error for the court to assign the roofing debt to Corey.

¶19 Corey also argues that the District Court erred in its division of Sarah and Corey's retirement accounts. Sarah had a retirement account through her employment at the Mental Health Center valued at $24,000. Sarah received a payout for that sum when she quit to take her job with the FBI, which the court awarded to Sarah in its entirety. Corey has a defined benefit retirement account through the Sheriff's Department. At the time of the hearings, Corey had contributed $21,251.82 to the account. The Sheriff's Department also contributed to his account, but he was not yet vested in those contributions. The District Court applied the time rule to determine the marital portion of Corey's account and split that evenly between the parties. Corey contends that the District Court abused its discretion when it awarded Sarah half of his retirement account while awarding her the entire value of her retirement account, and additionally that the court erred by using the time rule method to value his pension. We will address the court's use of the time rule method first.

¶20 It is well settled that pension plans are part of the marital estate. *In re Marriage of Spawn*, 2011 MT 284, ¶ 10, 362 Mont. 457, 269 P.3d 887. We have recognized two methods for valuing pension plans: the present value method, which requires a lump sum

distribution; and the time rule method, which defers distribution and divides the marital portion of the pension benefits when they are paid. *Marriage of Spawn*, ¶ 12 (citing *In re Marriage of Swanson*, 2004 MT 124, ¶ 21, 321 Mont. 250, 90 P.3d 418). While we have held that the present value method is generally the proper test, we have also routinely recognized that the time rule method may be preferred if the present value of the pension cannot be adequately valued or sufficient marital assets do not exist to offset the non-employee spouse's portion of the pension. *See Marriage of Spawn*, ¶ 12; *In re David*, 2009 MT 422, ¶ 14, 354 Mont. 44, 221 P.3d 1209; *Momsen v. Momsen*, 2006 MT 233, ¶ 27, 333 Mont. 463, 143 P.3d 450; *Marriage of Swanson*, ¶¶ 22-24; *In re Marriage of Truax*, 271 Mont. 122, 126, 894 P.2d 936, 938 (1995); *Rolfe v. Rolfe*, 234 Mont. 294, 297, 766 P.2d 223, 225 (1988). Given the numerous contingencies that ultimately determine the benefits received from a defined benefit plan when the employee spouse has not yet retired, the time rule method will generally be the better approach for these types of pensions.

¶21 The District Court found that part of Corey's non-vested retirement account through the Sheriff's Department is marital property. What benefits will come from that pension will be determined by a number of factors that cannot be known. If Corey quits the Sheriff's Department before he becomes vested, then he will only be entitled to the amount that he personally contributed to the account. If he quits after he is vested but before he is qualified for retirement, then he will be entitled to his contributions and the employer contributions. If he stays with the Sheriff's Department long enough to retire, then he will receive a monthly benefit payment for the rest of his life. The amount of that

monthly benefit would be determined by his length of service, highest average salary for thirty-six consecutive months, and age when he retires. Sections 19-7-101 et seq., MCA. Using the present value method to value Corey's retirement account would require that assumptions be made about all of these factors. Any assumption that does not prove true may considerably undervalue or overvalue the account. Thus, using the present value method would be pure conjecture and produce uncertain results, at best.

¶22 Instead, the District Court used the time rule method and found that the marital portion of Corey's benefits should be determined based on the following formula: "fifty percent times [the] number of months during the marriage during which contributions were made to [Corey's] account divided by the total number of months used to calculate [Corey's] retirement benefit and any retirement benefit adjustments." The formula will be applied to each benefit payment, and it ensures both parties will receive an equitable portion of the asset.

¶23 The District Court did not abuse its discretion by using the time rule method to divide Corey's defined benefit retirement account. The court properly applied the time rule method formula first adopted in *Rolfe* to determine the marital portion of the retirement account. The decision to use the time rule method was appropriate and well within the court's discretion.

¶24 With regards to Sarah's retirement account, the time rule method was unnecessary because Sarah had cashed-out and received a payout for its entire value. Thus, the present value was not only readily ascertainable, it was already determined. Just as he did with the roofing debt, however, Corey mistakenly takes the fact that Sarah was

9

ultimately awarded the entire value of her account to mean that it was not part of the court's equitable division of marital assets. Corey misinterprets the District Court's final asset and debt division. Sarah's retirement account was included as a marital asset, but Corey was awarded other assets to offset the value of his portion of that account. The District Court did not abuse its discretion.

¶25 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT